

# THE ATTORNEY GENERAL
# OF TEXAS

### AUSTIN 11, TEXAS

**WILL WILSON**
**ATTORNEY GENERAL**

October 31, 1957

Hon. Robert S. Calvert
Comptroller of Public Accounts
Capitol Station
Austin, Texas

Opinion No. WW-292

Re: Whether the Comptroller has the legal
authority to issue a warrant to re-
imburse the El Paso County Water Im-
provement District No. 1 for funds
expended in the prosecution of the
case of Texas v. New Mexico in the
United States Supreme Court.

Dear Mr. Calvert:

You have requested our opinion in answer to the fol-
lowing question:

"Do I have authority to issue my warrant to
reimburse the El Paso County Water Improvement
District No. 1 for funds expended in the prosecu-
tion of the case of Texas vs New Mexico, U. S.
Supreme Court?"

Your request attaches claim voucher in favor of El
Paso County Water Improvement District No. 1 of El Paso, Texas,
covering the period from October 25, 1951, to and including May
31, 1957. The items contained in the claim voucher consist
mainly of telephone calls, travel expenses, and fees for profes-
sional engineering services allegedly payable out of funds appro-
priated by House Bill 546, Acts 53rd Leg., 1953, Ch. 220, p. 577;
House Bill 140, Acts 54th Leg., 1955, Ch. 519, p. 1518; and House
Bill 133, Acts 55th Leg., 1957, Ch. 385, p. 1071.

House Bill 546, Acts 53rd Leg., 1953, Ch. 220, p. 577,
is in part as follows:

"Section 1. There is hereby appropriated
from moneys in the General Revenue not heretofore
appropriated Thirty Thousand Dollars ($30,000) to
the Governor to be disbursed by him to defray the
expenses incurred in the prosecution of the suit

by the State of Texas against the State of New
Mexico for the enforcement of the Rio Grande
Compact, now pending in the Supreme Court of
the United States.

"Sec. 2.  None of the money hereby appro-
priated is to be used for the payment of the fee
of any attorney who may be employed to assist in
this case.

"Sec. 3.  The fact that the money appropri-
ated by this Act is needed immediately to defray
the expenses of the suit by the State of Texas
against the State of New Mexico to enforce the
Rio Grande Compact creates an emergency. . . ."

House Bill 140, Acts 54th Leg., 1955, Ch. 519, p.
1518, is in part as follows:

"2.  To defray the expenses incurred in the
prosecution of the suit by the State of Texas
against the State of New Mexico to enforce the
Rio Grande Compact, such expenses not to include
attorneys fees of attorneys employed in the case,
there is hereby appropriated from moneys in the
General Revenue Fund the sum of .......... $25,000."

Since all of the items listed appear to have been expenses in-
curred prior to September 1, 1957, the effective date of House
Bill 133, Acts 55th Leg., 1957, none of these items is payable
from the appropriation contained therein and therefore this
appropriation may be disregarded.

It affirmatively appears from the items contained in
the claim voucher for which reimbursement is claimed that a
number of the items were for expenses incurred prior to May 27,
1953, the effective date of House Bill 546, Acts 53rd Legisla-
ture, and therefore could not be paid from the appropriation
therein contained.

Moreover, it appears from the face of the claim
voucher that the items of expenditure contained therein were
paid by El Paso County Water Improvement District No. 1 pur-
portedly in behalf of the State of Texas to cover various items
of expense theoretically incurred on behalf of the State of
Texas by various parties as "expenses incurred in the prosecu-
tion of a suit by the State of Texas against the State of New
Mexico to enforce the Rio Grande Compact."

Stated differently, the claim against the State of Texas is made by the El Paso County Water Improvement District No. 1 for the reimbursement of sums advanced by it in payment of expenses incurred by third parties.

Section 44, Article III, Constitution of Texas, provides in part as follows:

"The Legislature shall not . . . grant, by appropriation or otherwise, any amount of money out of the Treasury of the State, to any individual, on a claim, real or pretended, when the same shall not have been provided for by pre-existing law; . . ."

Section 49, Article III, Constitution of Texas, provides in part:

"No debts shall be created by or on behalf of the State, except to supply casual deficiencies of revenue, repel invasion, suppress insurrection, defend the State in war, or pay existing debt; . . ."

Prior to the passage of House Bill 546, Acts 53rd Legislature, 1957, effective May 27, 1953, there was no pre-existing law which would authorize the payment of any claim for expenses incurred in the prosecution of the suit of State of Texas v. State of New Mexico, other than by the Attorney General of Texas, and therefore under the provisions of both Sections 44 and 49, Article III, Constitution of Texas, no debt could be incurred on behalf of the State of Texas for the payment of obligations so incurred, nor could the Legislature appropriate any money out of the State Treasury to pay such claim.

After the effective date of House Bill 546, Acts 53rd Legislature, 1953, the Governor of the State of Texas was authorized to approve the payment of any expenses incurred during the period of two years from the effective date thereof for the purpose therein contained to the individual by whom the expense was incurred from the sum so appropriated. It appears from the filed claim that the items of expense for the payment of which reimbursement is sought, were all incurred by individuals or parties other than the claimant, and we have not found any constitutional or statutory authority which would permit El Paso County Water Improvement District No. 1 to bind or obligate the State of Texas for the payment of a debt incurred by another.

In State v. Ragland Clinic-Hospital, 138 Tex. 393, 159 S.W.2d 105, 106 (1942), after referring to Sections 44 and 49,

Article III, Constitution of Texas, the Supreme Court stated the rule as follows:

> "Under these provisions it is well settled that no one has authority to make a contract binding on the State, except where he is authorized so to do by the Constitution or a pre-existing statute."

The same rule of law was again stated in State v. Steck Co., 236 S.W.2d 866 (Civ.App. 1951, error ref.).

Since there appears to be no constitutional or statutory provision authorizing El Paso County Water Improvement District No. 1 to incur any obligation or create any debt on behalf of the State of Texas for the benefit of a third party it is our opinion that you are without authority to issue any warrant to reimburse the El Paso County Water Improvement District No. 1 for funds expended in the prosecution of the case of State of Texas v. State of New Mexico in the United States Supreme Court.

This opinion shall not be construed as passing upon the validity of any claim against the State of Texas made by any individual, firm, or corporation for reimbursement for expenses directly incurred in the prosecution of the suit by the State of Texas against the State of New Mexico to enforce the Rio Grande Compact by such individual, firm, or corporation.

SUMMARY

The Comptroller of Public Accounts may not issue a voucher for reimbursement of El Paso County Water Improvement District No. 1 for sums advanced by it for the payment of expenses incurred by others in behalf of the State of Texas in the prosecution of the suit of State of Texas v. State of New Mexico in the Supreme Court of the United States.

Yours very truly,

WILL WILSON
Attorney General of Texas

By _C. K. Richards_
C. K. Richards
Assistant

CKR:wb

APPROVED:

OPINION COMMITTEE

Geo. P. Blackburn, Chairman
J. C. Davis, Jr.
John Reeves
W. V. Geppert
Leonard Passmore